IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

REYMOND PAUL MARQUEZ,           )
Reg. No. 48448-480,             )
                                )
        Petitioner,             )
                                )
    v.                          )         CASE NO. 2:24-CV-765-WKW
                                )               [WO]
                                )
MILTON WASHINGTON,[1]           )
                                )
        Respondent.             )

## MEMORANDUM OPINION AND ORDER

## I. INTRODUCTION

Petitioner Reymond Paul Marquez, an inmate incarcerated at the Federal Prison Camp in Montgomery, Alabama ("FPC Montgomery") and proceeding *pro se*, filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, which was docketed on November 27, 2024. (Doc. # 1.) Petitioner contends that the Bureau of Prisons (BOP) has improperly withheld time credits that he earned under the First Step Act of 2018 (FSA). Specifically, Petitioner alleges that his FSA "clock" should have started on January 10, 2022, when he was sentenced and remanded to federal custody, but that the BOP only began crediting him on September 22, 2022, upon

---

[1] Petitioner originally named "R.D. Keyes" as Respondent. However, the warden of FPC Montgomery (and Plaintiff's custodian) is Milton Washington. Accordingly, the docket was updated to reflect Milton Washington as Respondent. (*See* Doc. # 20 n.1.)

his arrival at FPC Montgomery.  (Doc. # 1 at 1–2.)  Petitioner alleges that "exhaustion of the BOP's administrative remedies is not necessary due to futility." He further claims that the regulation relied upon by the BOP—28 C.F.R. § 523.42(a)—conflicts with 18 U.S.C. §§ 3585(a) and 3632(d)(4), which govern the start date for earning FSA time credits.[2]  (*See* Doc. # 1 at 3; *see also* Doc. # 19 at 2–4.)  In response, Respondent argues that Petitioner's § 2241 petition should be dismissed because the Administrative Procedure Act deprives this court of habeas jurisdiction to review BOP decisions concerning FSA earned time credits. Accordingly, jurisdiction must be addressed as a threshold matter.

## II.  JURISDICTION

Section 2241(a) grants jurisdiction to district courts to provide habeas relief to an inmate who is confined within the court's district at the time his petition is filed.  *See Rumsfeld v. Padilla*, 542 U.S. 426, 434 n.7 (2004); *see also Fernandez v. United States*, 1488, 1495 (11th Cir. 1991).  While Respondent does not contest

---

[2] Petitioner argues that § 523.42(a) "is more restrictive than the plain statutory language of FSA law." (Doc. # 19 at 3); *compare* § 543.42(a) ("An eligible inmate begins earning FSA Time Credits after the inmate's term of imprisonment commences (the date the inmate arrives or voluntarily surrenders at the designated [BOP] facility where the sentence will be served)") *with* § 3585(a) ("A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served") *and* § 3632(d)(4)(B) ("A prisoner may not earn time credits under this paragraph for an evidence-based recidivism reduction program that the prisoner successfully completed—(i) prior to the date of enactment of this subchapter; or (ii) during official detention prior to the date that the prisoner's sentence commences under section 3585(a).").

§ 2241's grant of jurisdiction, he argues that the Administrative Procedure Act (APA) deprives this court of habeas jurisdiction to review BOP decisions concerning FSA earned time credits.  (*See* Doc. # 18 at 12–13.)  Contrary to Respondent's assertion, Petitioner's claims are not barred from judicial review by the APA.

As this court recently acknowledged, "[t]he APA . . . plainly precludes this court's review of the BOP's decisions made under any provision in 18 U.S.C. §§ 3621 to 3626." *Woolsey v. Warden Milton Washington*, 2025 WL 2598794, at *11 (M.D. Ala. Sept. 8, 2025).  However, in his reply, Petitioner clarifies that he "is not asking for this Court to review the individualized administrative decision to deny him FSA credits" but rather "the [allegedly] unlawful BOP regulation 28 C.F.R. [§] 523.42(a) used by the BOP to deny him FSA time credits."  (Doc. # 19 at 3 (alterations added).)  Because Petitioner is challenging a BOP regulation rather than an administrative decision made by the BOP pursuant to that regulation, the APA does not preclude judicial review.  *See Woolsey*, 2025 WL 2598794, at *12–13.

## III.  DISCUSSION

Respondent also argues that Petitioner's § 2241 petition should be dismissed because Petitioner did not exhaust his administrative remedies prior to seeking habeas relief.  (Doc. # 18 at 2.)  Because Petitioner failed to exhaust the administrative remedies available to him before filing his § 2241 petition, the petition will be dismissed without prejudice.

## A.    <u>Exhaustion of Administrative Remedies</u>

First, Petitioner's contention that habeas petitions do not require exhaustion of administrative remedies prior to filing (*see* Doc. # 19 at 1) is incorrect.  In *Skinner v. Wiley*, the Eleventh Circuit explained that it, like several other circuits, has held that the Prison Litigation Reform Act of 1995 (PLRA)

> does not apply to habeas petitions because (1) habeas petitions are not traditional civil actions; (2) Congress designed the PLRA to reduce frivolous civil actions from prisoners; and (3) the Antiterrorism and Effective Death Penalty Act (AEDPA), which affects habeas petitions . . . was enacted two days after the PLRA.

355 F.3d 1293, 1295 (11th Cir. 2004) (per curiam), *abrogated on other grounds by*, *Santiago-Lugo v. Warden*, 785 F.3d 467, 474–75 (11th Cir. 2015).  Notwithstanding the PLRA's inapplicability to habeas petitions, the *Skinner* court noted that its "sister circuits . . . have consistently held that prisoners must exhaust administrative remedies before habeas relief can be granted."  *Id.*  (citing case law from the Second, Third, Fifth, Sixth, and Eighth Circuits).  Agreeing with the reasoning of its sister circuits, the *Skinner* court held that "prisoners seeking habeas relief, including relief pursuant to § 2241, are subject to administrative exhaustion requirements."  *Id.*

Over a decade later, *Santiago-Lugo v. Warden* clarified that the exhaustion requirement in the context of § 2241 petitions is a "non-jurisdictional or claim-processing rule, which seeks to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times."

785 F.3d at 472 (citation modified).  The court explained that "Congress said nothing at all in § 2241 about exhaustion" and labeled exhaustion of administrative remedies "a judge-made requirement."  *Id.* at 474.  Ultimately, the court abrogated *Gonzalez v. United States*, 959 F.2d 211 (11th Cir. 1992), and other Eleventh Circuit precedent, including *Skinner*, because "[i]t is no longer the law of this circuit that exhaustion of administrative remedies is a jurisdictional requirement in a § 2241 proceeding."  *Santiago-Lugo*, 785 F.3d at 474–75 & n.5.  "The exhaustion requirement is still a requirement; it's just not a jurisdictional one," meaning that "[a] court has the discretion to accept or reject a concession from the respondent that administrative remedies have been exhausted."  *Id.* at 475.  The fact that the exhaustion of administrative remedies is not a jurisdictional requirement, however, "does not mean that courts may disregard a failure to exhaust and grant relief on the merits if the respondent properly asserts the defense."  *Id.*; *see also Fleming v. Warden of FCI Tallahassee*, 631 F. App'x 840, 843 (11th Cir. 2015) (per curiam) ("[W]hile *Santiago–Lugo* held that the exhaustion requirement in § 2241 cases is not jurisdictional, it expressly noted that it is still a requirement that may be raised as a defense." (citation omitted)).

In his response, Respondent asserts that Petitioner failed to exhaust before filing his § 2241 petition.  (*See* Doc. # 18 at 3.)  Accordingly, Petitioner's § 2241 petition is subject to the "non-jurisdictional" and "judge-made" requirement that he

exhaust his administrative remedies before seeking habeas relief.  *See Santiago-Lugo*, 785 F.3d at 472, 474; *see also Skinner*, 355 F.3d at 1295.

### 1.    *"Proper" Exhaustion*

Proper exhaustion of administrative remedies is "a precondition to bringing suit in federal court." *Perttu v. Richards*, 605 U.S. 460, 465 (2025) (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)); *see also Cobb v. Warden*,  2025 WL 340004, at *2 (11th Cir. Jan. 30, 2025) (per curiam) ("[E]xhaustion is 'a precondition to an adjudication on the merits'" (quoting *Bryant v. Rich*, 530 F.3d 1368, 1374 (11th Cir. 2008))).  To "properly" satisfy the administrative-exhaustion requirement, "the inmate must use 'all steps' that the prison makes available." *Blevins v. FCI Hazelton Warden*, 819 F. App'x 853, 855–56 (11th Cir. 2020) (per curiam) (quoting *Woodford*, 548 U.S. at 90).  This means "the inmate must comply with the prison's deadlines and other procedural rules, including the rules relating to the filing of appeals." *Id.* at 856 (citing *Woodford*, 548 U.S. at 90; *Bryant*, 530 F.3d at 1378).  Determining the "boundaries of proper exhaustion" is done by examining "the requirements of the applicable prison grievance system." *See McGuire-Mollica v. Fed. Bureau of Prisons*, 146 F.4th 1308, 1314 (11th Cir. 2025) (quoting *Sims v. Sec'y, Fla. Dep't of Corr.*, 75 F.4th 1224, 1230 (11th Cir. 2023)).

### 2.    *The BOP's Administrative-Remedy Program*

Federal prisoners, like Petitioner, are subject to the BOP's administrative-remedy program, codified at 28 C.F.R. § 542.10 *et seq.* *See Blevins*, 819 F. App'x at 857. The BOP's administrative-remedy program comprises a four-step process that the prisoner must follow to properly exhaust his administrative remedies. *See Shivers v. United States*, 1 F.4th 924, 935 (11th Cir. 2021). First, the prisoner must submit an institutional-level "informal resolution" request (typically using a BP-8 form). *See* 28 C.F.R. § 542.13(a). Second, the prisoner must file a BP-9 form within twenty days following the alleged incident that serves as the basis for the request, unless the inmate demonstrates a valid reason for delay. *See* § 542.14(a). Third, if unsatisfied with the warden's response, an inmate may submit an appeal using a BP-10 form to the appropriate regional director within twenty days of the date the warden signed the response. *See* § 542.15(a). Fourth, an inmate who is unsatisfied with the regional director's response may submit an appeal to the general counsel using the appropriate BP-11 form within thirty days of the date the regional director signed the response. *See id.*

The regulations also provide response times at each level of the administrative-remedy process. *See* § 542.18. At the institutional level (BP-8 and BP-9), twenty calendar days from the date of filing are allotted to respond to an

inmate's request.[3]  At the BP-10 level, the regional director has thirty calendar days to respond.  At the BP-11 level, the BOP's general counsel has forty calendar days to respond.  *Id.*

### B.    Petitioner's and Respondent's Factual Allegations

#### 1.    *Petitioner's Factual Allegations—Initial Petition*

In his initial petition, Petitioner contends that he filed a BP-8, which was denied on August 22, 2024.  After his BP-8 was denied, Petitioner "followed up with a BP-10."  He further argues that his BP-10, which he had sent via certified mail, "was lost by the BOP" and he "was advised to restart the process."  (Doc. # 1 at 2.) However, notably, Petitioner concedes that he did not exhaust the BOP's administrative remedies prior to filing his § 2241 petition, claiming that his attempts to exhaust are futile.  (Doc. # 1 at 2.)  Petitioner argues that he should be excused from exhausting the BOP's administrative remedies because the process is time-consuming, and the BOP misunderstands the calculation and application of FSA earned time credits.  (Doc. # 1 at 2.)  In support of his position, Petitioner cites two out-of-circuit cases:  *Woodley v. Warden, USP Leavenworth*,[4] 2024 WL 2260904

---

[3] The "date of filing" is "the date [a request or appeal] is logged into the Administrative Remedy Index as received."  28 C.F.R. § 542.18.

[4] Petitioner uses the Lexis Nexis citation for this case:  *Woodley v. Warden*, 2024 U.S. Dist. LEXIS 87521 (D. Kan. May 15, 2024).

(D. Kan. May 15, 2024) and *Huihui v. Derr*,[5] 2023 WL 4086073 (D. Haw. June 20, 2023).

Ironically, the *Woodley* case weakens Petitioner's futility arguments. In *Woodley*, the Kansas District Court agreed with the petitioner that exhaustion of administrative remedies was futile. *See* 2024 WL 2260904, at *1. However, the *Woodley* petitioner specifically alleged that regional BOP authority had taken over his prison leading to a lockdown and making the necessary administrative-remedy forms unavailable to him. *Id.* Additionally, the *Woodley* petitioner's claimed grievance was identified as "sensitive" in nature such that he was instructed by BOP personnel to submit a "sensitive" claim directly to the regional director using a BP-10 form, bypassing preliminary administrative steps. *Id.* Petitioner here, on the other hand, simply argues that he should be excused from the exhaustion requirement and fails to make any specific factual allegations to support that assertion, other than conclusory statements regarding the inefficiency of the administrative-remedies process and the BOP's purported mistaken understanding and application of FSA credits. (Doc. # 1 at 2.)

---

[5] Petitioner uses the Lexis Nexis citation for this case: *Huihui v. Derr*, U.S. Dist. LEXIS 106532 (D. Haw. June 20, 2023).

### 2.    *Respondent's Factual Allegations—Response*

In response to Petitioner's § 2241 petition, Respondent asserts that Petitioner pursued administrative remedies at the BP-9 and BP-10 levels.  (Doc. # 18 at 5; Doc. # 18-1, *Ex. 1, Decl. of Jason White*, at 3, ¶ 7.)  Additionally, Respondent refutes Petitioner's claims that he should be excused from the exhaustion requirement and underscores Petitioner's concession that he had not exhausted the administrative remedies available to him before filing.  (*See* Doc. # 18 at 5–6.)  Revisiting the *Woodley* case cited by Petitioner, the respondent in *Woodley* did not dispute the petitioner's asserted facts, "particularly the fact that the necessary forms for exhausting [were] not available."  2024 WL 2260904, at *1.  Respondent in this case disputes Petitioner's argument that exhaustion of administrative remedies before filing for habeas relief was futile and therefore unnecessary.  (*See* Doc. # 18 at 6.)

In support of his position that Petitioner's failure to exhaust cannot be excused due to futility, Respondent cites two Eleventh Circuit cases:  *Rey v. Warden, FCC Coleman-Low*, 359 F. App'x 88 (11th Cir. 2009) (per curiam) and *McGee v. Warden, FDC Miami*, 487 F. App'x 516 (11th Cir. 2012) (per curiam).  (Doc. # 18 at 6.)  Both cases barred any futility exception to the pre-filing administrative-exhaustion requirement.  *See Rey*, 359 F. App'x at 91 ("[T]he futility exception to exhaustion is inapplicable to [the petitioner's] claim because exhaustion is mandatory." (citation omitted)); *see also McGee*, 587 F. App'x at  518 ("[Petitioner] has not cited any case

establishing that there is a futility exception to the requirement to exhaust administrative remedies under § 2241 petition[s].").  However, these cases were decided before *Santiago-Lugo* changed the Eleventh Circuit's interpretation of the exhaustion requirement and consequently, the availability or unavailability of a futility exception.  *See, e.g.*, *Straughter v. Warden FCC Coleman-Low*, 699 F. Supp. 3d 1304, 1307–08 (M.D. Fla. Oct. 18, 2023) (declining to categorically bar a potential futility exception based on authority cited by the respondent that relied on the Eleventh Circuit's pre-*Santiago-Lugo* understanding of exhaustion when imposing that categorial bar in the first instance).

To date, whether there is a futility exception to the "judge-made" exhaustion requirement applicable to § 2241 petitions remains "an unsettled question in the Eleventh Circuit after *Santiago-Lugo*."  *Cros-Toure v. Neely*, 2024 WL 2178618, at *2 (N.D. Ala. Mar. 4, 2024), *report and recommendation adopted*, 2024 WL 2163851 (N.D. Ala. May 14, 2024).  Thus, accounting for the change in this circuit's understanding of the exhaustion requirement post-*Santiago-Lugo*, to categorically bar a potential futility exception based on case law decided before *Santiago-Lugo* would be inappropriate, at least in this case.

3.    *Petitioner's Factual Allegations—Reply to Respondent's Response*

Petitioner's reply, placed into the prison mail system on April 8, 2025, says, "[S]ince the filing of this Petition, [Petitioner] has finally received a response to his regional remedy (BP-10)[.]"  (Doc. # 19 at 1.)  This statement not only serves as another admission by Petitioner that he failed to exhaust administrative remedies prior to seeking habeas relief, but the *coup de grâce* for Petitioner's ailing futility arguments.  Petitioner attempts to dampen his admission with a statement about how the BOP's response to his BP-10 was received nearly six months after he initially filed it rather than the required thirty days.  (Doc. # 19 at 1.)  While Petitioner's assertion regarding the thirty-day response time is correct, the fact that Petitioner did not receive a response to his BP-10 is immaterial in analyzing whether Petitioner has properly exhausted his administrative remedies.

Notably, the applicable regulation states, "If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level."  28 C.F.R. § 542.18.  After not receiving a response from the regional director for more than thirty days following the filing of his appeal at the BP-10 level, Petitioner was required to treat that nonresponse as a denial of that appeal.  The Northern District of Alabama has recently held, "[I]f the Regional Director does not respond within the allotted time, the prisoner *must* proceed through the final level of review in the administrative

remedy process by appealing to the Office of General Counsel." *Johnson v. Neely*, 2025 WL 2355602, at *2 (N.D. Ala. July 21, 2025) (emphasis added), *report and recommendation adopted*, 2025 WL 2345833 (N.D. Ala. Aug. 13, 2025).  Petitioner has set forth no compelling reason, factual or otherwise, to deviate from that proposition.

Petitioner asserts that he filed his BP-10 appeal on September 10, 2024.  (*See* Doc. # 19 at 1.)  According to the BOP's SENTRY database, his appeal was received September 19, 2024 (Doc. # 18-1, *Attach. 2, Administrative Remedy Generalized Retrieval*, at 10), making the filing date of Petitioner's BP-10 September 19, 2024. *See* 28 C.F.R. § 542.18.  Thus, when the regional director failed to respond by October 19, 2024 (thirty calendar days from the filing date), Petitioner could have— and in this circuit, should have—considered that nonresponse a denial and filed an appeal to the BOP's general counsel (*i.e.*, a BP-11).  *See Johnson*, 2025 WL 2355602, at *2.  In fact, Petitioner did not file an appeal to the BOP's general counsel (a BP-11) until March 28, 2025.  (*See* Doc. # 19-1, *Ex. A, Central Office Administrative Remedy Appeal*, at 2.)  Petitioner's § 2241 petition was docketed on November 27, 2024.  Therefore, Petitioner did not even attempt to fully exhaust his administrative remedies until nearly four months after he filed for habeas relief.

Additionally, though Petitioner begins his reply by admitting he did not exhaust before filing, he continues to argue futility.  (*See* Doc. # 19 at 1.)  In support

of this argument, he cites a case that he purports was decided by the Eleventh Circuit, stating, "This court held in <u>Ahanotu v. Bert Bell</u>, 2024 U.S. Dist. LEXIS 92945 (11th Cir. 2024) that the court can excuse the exhaustion requirement when 'resort to administrative remedies would be futile or the remedy inadequate.'"[6]  (Doc. # 19 at 1.)  Notably, Petitioner ignores the language surrounding this quote extrapolated from *Ahanotu*.  The full quote is as follows:  "The Eleventh Circuit 'strictly enforce[s] an exhaustion requirement on plaintiffs bringing claims in federal courts.'  In exceptional circumstances, however, a court can excuse the exhaustion requirement when 'resort to administrative remedies would be futile or the remedy inadequate.'"  *Ahanotu v. Bert Bell/Pete Rozell NFL Player Ret. Plan*, 2024 WL 2061675, at *3 (S.D. Fla. Apr. 2, 2024) (quoting *Perrino v. S. Bell Tel. & Tel. Co.*, 209 F.3d 1209, 1315 (11th Cir. 2000)).[7]

---

[6] Petitioner cites *Ahanotu* as an Eleventh Circuit case; however, this case comes from the Southern District of Florida, and the proper Lexis Nexis citation is *Ahanotu v. Bert Bell/Pete Rozell NFL Player Ret. Plan*, 2024 U.S. Dist. LEXIS 92945 (S.D. Fla. Apr. 2, 2024).

[7] Petitioner is cautioned that mischaracterizations of the law run afoul of Rule 11 of the Federal Rules of Civil Procedure.  Rule 11(b) states:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney *or unrepresented party* certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry under the circumstances:  . . . (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
> . . . .

Fed R. Civ. P. 11(b) (emphasis added).  Violations of Rule 11(b) can result in the imposition of sanctions.  *See* Fed. R. Civ. P. 11(c).

Petitioner then contradicts himself and says that he exhausted his administrative remedies even though he was not required to do so because he filed a § 2241 petition. (Doc. # 19 at 1.) Subsequently, he says that "Respondent cites numerous 11th circuit cases that purport to suggest that administrative exhaustion is a requirement." (Doc. # 19 at 1.) Case law cited by Respondent (namely, *Santiago-Lugo* and cases decided post-*Santiago-Lugo*) does not "purport to suggest" an administrative-exhaustion requirement; these cases establish and enforce such a requirement. For example, in *Davis v. Warden, FCC Coleman—USP I*, the Eleventh Circuit repeated the pre-filing administrative-exhaustion requirement articulated in *Santiago-Lugo*: "[A] petitioner must exhaust available administrative remedies before he can obtain [habeas] relief." 661 F. App'x 561, 562 (11th Cir. 2016) (per curiam) (citing *Santiago-Lugo v. Warden*, 785 F.3d 467, 474–75 (11th Cir. 2015)). The court then enforced the requirement by affirming the district court's dismissal of the petitioner's § 2241 petition based on his failure to exhaust. *See id.* at 562–63.

Petitioner further argues that "the United States Supreme Court has ruled that exhaustion requirements should not be applied if pursuing remedies through the administrative process is futile" and cites *Ross v. Blake*.[8] (Doc. # 19 at 1.) In *Ross*,

---

[8] In *Ross v. Blake*, the Supreme Court rejected the Fourth Circuit's "special circumstances" exception to the PLRA's exhaustion requirement. 578 U.S. 632, 638 (2016). However, it did recognize the PLRA's "textual exception" to mandatory exhaustion: "An inmate . . . must exhaust available remedies, but need not exhaust unavailable ones." *Id.* at 642.

the Court set out three specific circumstances in which an administrative remedy, while "on the books," is essentially "unavailable" and thus need not be exhausted. *See* 578 U.S. 632, 643–44 (2016).  The excepting circumstances set forth in *Ross* apply in the context of the PLRA; however, the Eleventh Circuit has applied these circumstances in analyzing whether a § 2241 petitioner's administrative remedies were unavailable to her thus excepting her from the exhaustion requirement.  *See Blevins v. FCI Hazelton Warden*, 819 F. App'x 853, 856 (11th Cir. 2020) (per curiam).  The *Blevins* court defined an unavailable administrative remedy as one that "cannot capably be used to obtain some relief" and articulated the Supreme Court's three scenarios that meet the criteria for unavailability:

> (1) where "despite what regulations or guidance materials may promise," the administrative process "operates as a simple dead end— with officers unable or consistently unwilling to provide any relief to aggrieved inmates," (2) where the administrative process is "so opaque that it becomes, practically speaking, incapable of use" because "no ordinary prisoner can discern or navigate it," and (3) where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."

*Id.* (quoting *Ross*, 578 U.S. at 643–44).  The bulk of Petitioner's argument regarding the unavailability of administrative remedies revolves around his assertion that "pursuing an administrative remedy is futile because the BOP has demonstrated a pre-determined position of defying the FSA through the systematic non-compliance with FSA and federal court decisions."  (Doc. # 19 at 1.)  However, Petitioner's conclusory statements of his belief that exhaustion of administrative remedies is

16

futile are insufficient to excuse his failure to exhaust before seeking habeas relief. *See Higginbottom v. Carter*, 223 F.3d 1259, 1261 (11th Cir. 2000) (per curiam) (holding that an inmate's belief that administrative procedures are futile or needless does not excuse exhaustion in the context of the PLRA); *see also Martin v. Neely*, 2024 WL 4521942, at *1 (N.D. Ala. Sept. 19, 2024) ("[Section 2241 petitioner's] belief that exhaustion would have been futile is entirely conclusory and thus insufficient to excuse her failure to exhaust." (citation omitted)), *report and recommendation adopted*, 2024 WL 4520939 (N.D. Ala. Oct. 17, 2024).

Moreover, it bears repeating that whether a futility exception to the exhaustion requirement exists in the Eleventh Circuit is "an unsettled question . . . after *Santiago-Lugo*." *Cros-Toure v. Neely*, 2024 WL 2178618, at *2 (N.D. Ala. Mar. 4, 2024) (citations omitted), *report and recommendation adopted*, 2024 WL 2163851 (N.D. Ala. May 14, 2024). However, in the years since *Santiago-Lugo*, courts within the Eleventh Circuit, including the Northern District of Alabama in *Cros-Toure*, have clarified that a showing of "extraordinary circumstances" is required to invoke a futility exception. *Id.* (citing *Jameis v. United States*, 168 F. App'x 356, 359 (11th Cir. 2006) (per curiam) (further citation omitted)); *see also, e.g.*, *Gomez-Feliz v. Jenkins*, 2024 WL 5700925, at *2 (N.D. Ga. Dec. 16, 2024) (acknowledging that no futility exception to the exhaustion requirement under § 2241 has been established, but even if an exception existed, it would "apply only in extraordinary

17

circumstances." (citation omitted)); *Carillo v. Warden FPC Pensacola*, 2025 WL 1439526, at *2 (N.D. Fla. Apr. 21, 2025) (identifying the petitioner's § 2241 petition as subject to dismissal because he failed to exhaust his administrative remedies and did not present extraordinary circumstances that would justify exemption from the exhaustion requirement), *report and recommendation adopted*, 2025 WL 1433566 (N.D. Fla. May 19, 2025).  Petitioner's conclusory assertions are insufficient to warrant a finding of the kind of "extraordinary circumstances" that would support the invocation of a futility exception to the exhaustion requirement in this case.

Finally, Petitioner's last argument with respect to the exhaustion requirement is that "multiple circuits have recognized that even prudential exhaustion requirements must yield to cases like this one where the challenge involves statutory interpretation rather than factual disputes."  (Doc. # 19 at 2.)  In support of this assertion, Petitioner cites two cases.  The first case, *Geiger v. United States*, which Petitioner cites as 502 F.2d 1290, 1292–93 (8th Cir. 1974), does not appear to exist. A search for the case at the citation provided by Petitioner turns up a case called *United States v. Ingham*, 502 F.2d 1287 (5th Cir. 1974), which has nothing to do with the administrative-exhaustion requirement or any potential exceptions thereto. The second case, *Elwood v. Jeter*, 386 F.3d 842, 844 n.1 (8th Cir. 2004),[9] provides

---

[9] Petitioner incorrectly cites the *Elwood* case as *Elwood v. Jeter*, **368** F.3d 842, 844 n.1 (8th Cir. 2004) (emphasis added).  (*See* Doc. # 19 at 2.)

18

no support for Petitioner's contended statutory-interpretation exception to the exhaustion requirement. The *Elwood* petitioner's failure to exhaust his administrative remedies was not excused because his case revolved around a question of statutory interpretation but because the government waived the requirement when it conceded that "[the petitioner's] continued use of the grievance procedure to contest the validity of the BOP's new policy would be futile." *Id.* at 844 n.1. Respondent did not waive the requirement that Petitioner exhaust his administrative remedies before filing, as evidenced by his raising the issue of Petitioner's failure to exhaust in his response. (*See* Doc. # 18 at 3.) Moreover, in a recent case examining a § 2241 petitioner's argument that exhaustion is not required when a claim presents a question of statutory interpretation, the Northern District of Alabama said, "[T]he court is unable to locate any Eleventh Circuit precedent recognizing an exception to the administrative exhaustion requirement for a claim that presents a question of statutory interpretation." *Nuckles v. Yeager*, 2025 WL 1490057, at *2 (N.D. Ala. May 22, 2025).

## C.   <u>Respondent's Response (Construed as a Motion to Dismiss)</u>

Respondent has asked for dismissal of Petitioner's § 2241 petition because Petitioner failed to exhaust his administrative remedies. (*See* Doc. # 18 at 3.) Deciding a motion to dismiss for failure to exhaust administrative remedies involves a two-step process. *See Blevins v. FCI Hazelton Warden*, 819 F. App'x 853, 856

(11th Cir. 2020) (per curiam). The first step requires the court to "look to the inmate's and respondent's factual allegations, and if they conflict, take the inmate's version of the facts as true." *Id.* (citing *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008)). If, after reviewing the allegations in a light favorable to the petitioner, the respondent is entitled to dismissal of the petition because the petitioner failed to exhaust, then the petition "must be dismissed." *Id.* (quoting *Turner*, 541 F.3d at 1082). If the inmate's petition is not subject to dismissal after the first step, the court must then move to the second step and "make specific findings in order to resolve the disputed factual issues related to exhaustion." At this second step, "the respondent bears the burden of proving that the inmate has failed to exhaust all available administrative remedies." *Id.* (citing *Turner*, 541 F.3d at 1082). After making findings on the disputed factual issues, the court must "then decide[] whether under those findings the prisoner has exhausted his available administrative remedies." *Id.* (quoting *Turner*, 541 F.3d at 1082).

It is undisputed and, in fact, Petitioner admits his failure to exhaust the administrative remedies available to him before filing his § 2241 petition. (*See* Doc. # 1 at 2; Doc. # 18 at 5; Doc. # 19 at 1.) Despite examining Petitioner's futility arguments in a light favorable to him, it cannot be overlooked that he concedes that he did not exhaust administrative remedies prior to filing for habeas relief. And even after reviewing both Petitioner's and Respondent's factual allegations in a light

favorable to Petitioner, his concession that he did not file an appeal at the BP-11 level until after he filed this petition means that Respondent is entitled to dismissal of the petition.  Under the first *Turner v. Burnside* step, Petitioner has failed to exhaust the BOP's administrative remedies, and therefore, this petition "must be dismissed." *Blevins*, 819 F. App'x at 856 (quoting *Turner*, 541 F.3d at 1082). Because Petitioner's § 2241 petition is subject to dismissal at this first step, there is no reason to proceed to *Turner*'s second step in deciding a motion to dismiss for failure to exhaust.

## IV.  CONCLUSION

Based on the foregoing, it is ORDERED that Respondent's Response to the § 2241 Petition (Doc. # 18), which is construed as a motion to dismiss, is GRANTED.

It is further ORDERED that the Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 is DISMISSED without prejudice.

Final Judgment will be entered separately.

DONE this 15th day of September, 2025.

                              /s/ W. Keith Watkins
                    _____
                         UNITED STATES DISTRICT JUDGE